# ROSENBERG & GIGER
### —— A PROFESSIONAL CORPORATION ——

250 Park Avenue
Twelfth Floor
New York, NY 10177

Tel: (646) 494-5000
Fax: (646) 595-0590

February 6, 2017

**VIA ECF**
Hon. Paul G. Gardephe, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2204
New York, NY 10007

      Re:  Shapiro v. NFGTV, Inc. d/b/a Eastern, et al.,16 Civ. 9152 (PGG)

Dear Judge Gardephe:

      This firm is counsel to defendants NFGTV, Inc. d/b/a Eastern ("Eastern") and WE tv LLC (collectively, "defendants") in the referenced action. I write pursuant to Rule 4.A. of Your Honor's Individual Rules of Practice to request a pre-motion conference with regard to defendants' contemplated Fed. R. Civ. P. 12(b)(6) Motion, seeking dismissal of plaintiff's Complaint, and to address defendants' intention to seek sanctions pursuant to Fed. R. Civ. P. 11 in light of the patently frivolous nature of those claims. Plaintiff has not consented to defendants' proposed Motions.

## A. **DEFENDANTS' CONTEMPLATED RULE 12(B)(6) MOTION.**

      As she describes herself in her Complaint, plaintiff is a "successful," Harvard-educated attorney who agreed to participate as a principal character on defendants' reality television series *Money. Power. Respect.* (the "Series"). Effective as of September 30, 2015, plaintiff entered into a comprehensive written agreement with Eastern governing the terms of her participation in the Series (the "Participant Agreement"), a copy of which is appended to plaintiff's Complaint. Despite actively negotiating the Participant Agreement, plaintiff - - apparently now regretful of her decision - - has asserted claims in this action that are directly contrary to, and are barred by, the express provisions of that Agreement.

      The principal thrust of plaintiff's Complaint is that a third-party participant in the Series made certain comments about plaintiff in an episode of the Series, which plaintiff views as defamatory and disparaging of her professional conduct as an attorney. Based on these third-party comments (and certain related conduct), plaintiff has asserted claims for breach of the Participant Agreement (Count I); breach of the implied covenant of good faith and fair dealing (Count II); defamation (Count III); intentional misrepresentation (Count IV); and fraudulent inducement (Count V). In raising these claims, plaintiff has either mischaracterized or ignored entirely the actual language of the Participant Agreement - - language that, on its face, requires dismissal of all of plaintiff's claims as a matter of law.

### 1. **The Release and Covenant Not to Sue Set Forth in the Participant Agreement Bars Plaintiff's Claims, in Their Entirety.**

      In addition to the fact that (as further discussed below) each of the separate claims that plaintiff has asserted in her Complaint is subject to dismissal as contrary to express provisions of the Participant Agreement, those claims must be dismissed, in any event, for the independent reason that they are barred by the release and covenant not to sue set forth in paragraph 13(a) of the Participant Agreement.

Pursuant to that contractual provision, plaintiff, an attorney, (a) "unconditionally and irrevocably agree[d]" not to "sue or make any claim against" defendants "in any way directly or indirectly related to or arising directly or indirectly out of the" Series, "includ[ing], but not ... limited to, [claims] based on . . . breach of contract, breach of any statutory or other duty of care owed under applicable laws, libel, slander [or] defamation . . ."; and (b) expressly waived and released any such claims. This covenant not to sue/release provision of the Participant Agreement, standing alone, requires dismissal of all of plaintiff's claims. See Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V., 17 N.Y.3d 269, 276, 929 N.Y.S.2d 3, 8 (2011) (A release "constitutes a complete bar to an action on a claim which is the subject of the release," and its signing "is a 'jural act' binding on the parties."); see also Polar Int'l Brokerage Corp. v. Richman, 32 A.D.3d 717, 720, 820 N.Y.S.2d 584, 587 (1st Dep't 2006) (dismissing claims barred by covenant not to sue).

Indeed, New York Courts have repeatedly held, in decisions that are directly applicable to and dispositive of plaintiff's claims, that general releases entered into by participants in reality television shows bar *any* claims - - including claims arising after the releases are signed - - arising out of the plaintiffs' participation in those shows. See, *e.g.*, Bihag v. A&E TV Networks, LLC, 2016 U.S. App. LEXIS 17673, at *4 (2d Cir. Sept. 27, 2016); Klapper v. Graziano, 970 N.Y.S.2d 355, 363, 2013 N.Y. Misc. LEXIS 3495 (Sup. Ct. Kings Co. 2013). As a number of Courts have observed, the inherent nature of reality television virtually compels this result: "The relatively recent phenomenon of reality television has created a unique form of entertainment ..., [which] offers opportunities for embarrassing and insulting participants and the more outlandish the conduct, the higher the ratings. ... Because of the nature of this type of entertainment it appears obvious that the participants would be required to submit a release as a condition of appearing on a reality television show. ..., [which] serve[s] as a level of protection to the producers and owners of the ... show." Klapper, 970 N.Y.S.2d at 359. *A fortiori* here, as the unequivocal, general release and covenant not to sue set forth in paragraph 13(a) of the Participant Agreement unquestionably "was understood and the risks were apparent and obvious" (id. at 363) to plaintiff, herself an attorney. This express provision of the Participant Agreement bars all of plaintiff's claims in this action, as a matter of law.

## 2. Plaintiff's Claims Run Contrary to, and Are Barred By, Express Provisions of the Participant Agreement.

Even had plaintiff not voluntarily waived and released her claims, each of those claims contravenes express provisions of the Participant Agreement, mandating their dismissal at the pleadings stage.

### a. Plaintiff's Breach of Contract Claim (Count I) is Subject to Dismissal as it is Predicated on Alleged Conduct that Does Not Violate, and is Expressly Permitted by, the Participant Agreement.

Plaintiff ostensibly bases her breach of contract claim on paragraph 2(a) of the Participant Agreement, which plaintiff characterizes as the "Ethics Clause." That provision provides, in pertinent part, that, if plaintiff "object[s] to an act required by [defendants] (prior to the filming or recording of such act) based on [her] reasonable good faith belief that [her] performance of such act will cause [her] to directly violate a rule of professional conduct applicable to" her, plaintiff may object in writing to defendants' directive that she perform that act, and her refusal to perform it "shall not be deemed a breach of" the Participant Agreement. In her Complaint, plaintiff casts this provision as a broad

prohibition against portraying plaintiff on the Series in any manner that "implicate[s] attorney ethics rules." (Compl. ¶ 34.) Building on this faulty premise, plaintiff suggests that she "invoked" the "Ethics Clause" on two occasions when another principal character in the Series "disparaged [plaintiff] and questioned her professional ethics" during filmed scenes (id. ¶ 7), and that defendants' airing of the second of those scenes somehow constituted a breach of the "Ethics Clause."

Plaintiff's averments reflect a purposeful distortion of the "Ethics Clause." In actuality, that contractual provision provides only that plaintiff can object if defendants require her to perform "*an act*" that plaintiff, in good-faith, believes will cause her "to directly violate a rule of professional conduct." Plaintiff's breach of contract claim does not, however, allege that defendants required her to perform any act, let alone one that might be violative of her ethical obligations as an attorney. Rather, the Complaint alleges that a third-party participant in the Series uttered comments that, in plaintiff's view, were defamatory and disparaged her in the discharge of her professional obligations. The Ethics Clause, however, by its terms does *not* afford any protections to plaintiff against such allegedly defamatory comments. In fact, in paragraph 12(c) of the Agreement, plaintiff specifically acknowledged "that the [Series] may consist of opinions and/or statements about, or conduct affecting, me made by or engaged in by other participants or other people connected with the [Series]"; "that some of these opinions, conduct and/or statements may be considered . . . defamatory, or otherwise offensive and injurious to me"; and that defendants nonetheless "shall have the right to include any such information and any such appearance, depiction, portrayal, actions and statements in the [Series] as edited by [defendants] in [their] sole discretion."

Stated most simply, the sole supposed basis for plaintiff's breach of contract claim, *i.e.*, that a third-party allegedly defamed her during the Series and that the same somehow violated the Participant Agreement, is belied by the express provisions of the Agreement, requiring dismissal of that claim.

### b. Plaintiff's Breach of Implied Covenant Claim (Count II) is Subject to Dismissal as it is Duplicative of Her Baseless Breach of Contract Claim.

Plaintiff's claim for breach of the implied covenant of good-faith and fair-dealing, predicated on the same alleged conduct that plaintiff avers constituted a breach by defendants of the "Ethics Clause" (see Compl. ¶ 68), is also subject to dismissal. It is well settled that such a claim will not lie where, as here, it is duplicative of a breach of contract claim and is predicated on the alleged breach of an express contractual provision. See Matsumura v. Benihana Nat. Corp., 465 Fed. Appx. 23, 29 (2d Cir. 2012) ("New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled.").[1] Moreover, as discussed above, the provision of the Participant Agreement underlying plaintiff's contract-based claims manifestly does not afford plaintiff any protection against the alleged conduct upon which she bases her claims - - conduct in respect of which plaintiff expressly assumed the risk in paragraph 12(c) of the Participant Agreement. As such, the Court properly should dismiss plaintiff's implied covenant claim. See State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d

---

[1] Dismissal of plaintiff's implied covenant claim is warranted even though plaintiff may argue that she has pled that claim "in the alternative" to her claim for breach of contract. See Spread Enters. v. First Data Merch. Servs. Corp., 11 Civ. 4743 (ADS)(ETB), 2012 U.S. Dist. LEXIS 119080, at *13 (E.D.N.Y. 2012) ("While in most cases, a plaintiff may plead even inconsistent claims pursuant to Fed. R. Civ. P. 8(d), in the context of a claim for breach of the covenant of good faith and fair dealing, claims are not 'in the alternative' when they are based on the exact same allegations.").

158, 169 (2d Cir. 2004) ("[T]he duties imposed by an implied covenant of good faith and fair dealing are not without limits, and no obligation can be implied that would be inconsistent with other terms of the contractual relationship."); Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198-199 (2d Cir. 2005) (The "implied covenant ... does not add to the contract a substantive provision not included by the parties.").

### c. Plaintiff's Defamation Claim (Count III) is Subject to Dismissal as Plaintiff Waived That Claim.

The express provisions of the Participant Agreement also bar plaintiff's putative defamation claim, premised on the same allegedly disparaging third-party comments, which, according to the Complaint, "Defendants aired ... on national television." (Compl. ¶ 71.) As confirmed in the language of paragraph 12(c) of the Participant Agreement quoted above, plaintiff expressly acknowledged that she might be defamed by another participant in the Series, and that defendants nonetheless could proceed with broadcasting any such defamatory scenes. As such, plaintiff unequivocally waived her claim for defamation, which is based on such third-party comments. See Krupnik v. NBC Universal, Inc., 2010 N.Y. Misc. LEXIS 6785, at *21, 964 N.Y.S.2d 60 (Sup. Ct. N.Y. Co. 2010) (dismissing defamation claim based on the use of a photograph of plaintiff in a lewd film scene where plaintiff had signed an agreement permitting "any and all uses whatsoever of the Photo").

### d. Plaintiff's Claims for Intentional Misrepresentation and Fraudulent Inducement (Counts IV and V) are Subject to Dismissal as They Are Contrary to the Participant Agreement's Integration Clause and Manifestly Implausible.

Plaintiff's claims for intentional misrepresentation and fraudulent inducement - - both of which are predicated on alleged representations by defendants that the Series "would cast its participants in a favorable and respectful light" (Compl.¶¶ 80, 81, 89, 90) - - are subject to dismissal for at least two independent reasons. First, in light of the inherent nature of reality television - - which, as noted above, has been described by a New York Court as "offer[ing] opportunities for embarrassing and insulting participants and the more outlandish the conduct, the higher the ratings" (Klapper, 970 N.Y.S.2d at 363) - - those claims are not remotely "plausible," and are thus subject to dismissal for that reason alone. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (holding that, to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must ... state a claim to relief that is plausible on its face"). Second, the intentional misrepresentation and fraudulent inducement claims are, in any event, barred by the integration clause contained in paragraph 27(b) of the Participant Agreement, pursuant to which plaintiff acknowledged that, in entering into that Agreement, she did not "rel[y] upon any statement or representation, express or implied, of [defendants] other than as specifically and explicitly set forth" in the Participant Agreement. See, e.g., Kremer v. Sinopia LLC, 104 A.D.3d 479, 480, 961 N.Y.S.2d 383, 384 (1st Dep't 2013) (affirming dismissal of fraudulent inducement claim "because the allegation that plaintiff ... justifiably relied on a pre-contractual representation by [the defendant] is refuted by the merger/integration clause of" the parties' agreement).[2]

---

[2] While the foregoing is dispositive of the issue, plaintiff's conclusory fraud-based claims also fail to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9. Plaintiff offers no allegation as to who made the allegedly offending comments, when they were made or, even more importantly, any specifics regarding the "substance" of the alleged misrepresentations. Rather, plaintiff weakly offers that some unidentified party at some unspecified time allegedly suggested that this reality show would portray its participants respectfully and favorably and "avoid any negative implications." (Compl. ¶¶ 4, 80.) Such vague and conclusory allegations fail to meet the liberal pleadings standards required by Iqbal, let alone the heightened

## B. **DEFENDANTS' RULE 11 CONCERNS.**

In light of the manifestly frivolous nature of plaintiff's claims, there is ample basis for defendants to file a Motion for sanctions pursuant to, *inter alia*, Fed. R. Civ. P. 11. It is well settled that an attorney, and, in certain instances, a represented party, "may be subject to sanctions under Rule 11 for presenting frivolous claims in a pleading." Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 177 (2d Cir. 2012). "[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement." Id. "With respect to legal contentions, the operative question is whether the argument is frivolous, *i.e.*, the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands." Id. (internal citations omitted).

Each of plaintiff's putative claims readily satisfies this standard. Plaintiff, a Harvard-educated attorney who is represented by counsel, has asserted claims against defendants that run directly contrary to (and are barred by) the express provisions of the Participant Agreement that plaintiff actively negotiated and voluntarily entered into. Despite being placed on repeated, explicit notice that plaintiff's claims are baseless and contravene the terms of the Participant Agreement and settled law, plaintiff's counsel has failed either to withdraw those claims or to offer any explanation as to why they are not subject to immediate dismissal, and defendants fully expect that they will be unable to do so in response to this letter. Courts of this District routinely impose sanctions pursuant to Rule 11 in similar circumstances. See, *e.g.*, Gold v. Last Experience, 97 Civ. 1459 (JGK), 1999 U.S. Dist. LEXIS 3266, at *9 (S.D.N.Y. 1999) (granting sanctions motion as "[i]t is plain that the complaint in this case was frivolous because it was barred by" a written agreement between the parties); Landmark Ventures, Inc. v. Cohen, 13 Civ. 9044 (JGK), 2014 U.S. Dist. LEXIS 165366, at *13 (S.D.N.Y. 2014) (same).[3]

\*\*\*

For the foregoing reasons, defendants respectfully request a pre-motion conference with regard to defendants' contemplated Motion pursuant to Fed. R. Civ. P. 12(b)(6) and possible request for sanctions pursuant to Fed. R. Civ. P. 11.

Respectfully submitted,

John J. Rosenberg
Direct Dial: (646) 494-5011
jrosenberg@rglawpc.com

cc:    Plaintiff's counsel (via email/ECF)

---

pleading requirements of Rule 9 (see Dimuro v. Clinique Labs LLC, 572 Fed. Appx. 27, 30 (2d Cir. 2014)), providing yet a further basis for their dismissal.

[3] Defendants and their counsel take very seriously the gravity of seeking sanctions against a party and her counsel and they will not do so cavalierly. Defendants believe it appropriate to place plaintiff and her counsel on formal notice that there may well be serious consequences to their apparent willingness to proceed with plaintiff's baseless claims, and, as a concomitant thereto, to address these issues with the Court at a pre-motion conference, as contemplated by Your Honor's Individual Rules.